JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
STEVEN MYHRE
Nevada Bar Number 9635
NADIA AHMED
Nevada Bar Number 15489
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336 / Fax: (702) 388-5087
Steven.Myhre@usdoj.gov
Nadia.Ahmed2@usdoj.gov

*Attorneys for United States of America*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>ORLANDIS WELLS,<br><br>    Defendant. | Case No.: 2:19-cr-00216-ART-NJK<br><br>**Government's Motion in Limine on Admissibility of Related Acts as Inextricably Intertwined Evidence or as Relevant Under Fed. R. Evid. 404(b)** |

**Certification:** This Motion is timely filed. Further, the parties have met and conferred pursuant to the Local Rule and were unable to reach agreement or resolution hence necessitating the instant Motion in Limine ("Motion").

The United States seeks a preliminary ruling regarding the admissibility of evidence regarding various acts committed by defendant Orlandis Wells before and after conduct charged in the Indictment. This evidence – as identified more fully below -- is admissible because it is inextricably intertwined with the charged conduct. Even if the Court finds that this evidence is "other acts evidence", it is admissible as proof of defendant's motive, intent, knowledge, plan,

1

and identity under Fed. R. Evid. 404(b). Further, the probative value of the evidence substantially outweighs any danger of unfair prejudice, confusion, or undue delay under Fed. R. Evid. 403.

Because this Motion seeks a potential ruling under Rule 404(b), it will also serve as formal notice of the government's intent to offer same at trial. Fed. R. Evid. 404(b)(2)(A).[1]

## FACTS

The Defendant is charged with thirty-two counts of unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841.  In Counts One through Four of the Indictment, the Defendant is charged with knowingly and intentionally distributing hydrocodone to a patient without medical necessity and outside the usual course of his professional practice.  In Counts Five through Thirty-Two, Defendant is charged with knowingly and intentionally distributing oxycodone to fourteen additional patients without medical necessity and outside the usual course of his professional practice.

The government anticipates that the evidence adduced at trial will show that the Defendant is a Doctor of Medicine licensed to practice in the State of Nevada, formally specializing in obstetrics/gynecology with a practice that emphasized hormone therapy. Defendant claimed that at times relevant his practice included treating patients for pain.

The evidence will show that beginning in or about February 2016 and continuing through in or about August 2019, the Defendant routinely prescribed highly addictive and dangerous Schedule II controlled substances, including oxycodone and hydrocodone, to supposed pain patients.  The Defendant's general practice was to charge each patient $300 in cash each month in exchange for a prescription, usually for 120 pills of oxycodone HCL 30, the highest dose and highest amount he could give in a single month. In this regard, the government must prove that

---

[1] Consistent with Local Criminal Rule 12-2, the government met and conferred with counsel for the Defendant prior to filing the instant Motion.

in writing the prescriptions, the Defendant knew and intended to act without legitimate medical purpose and outside the scope of his usual professional practice. In this vein, the government will seek to introduce "other acts" evidence during its case in chief as further described below. As will be shown, these acts relate to actions taken and statements made by defendant that advance proof of his knowledge and intent to act without authorization in providing prescriptions for oxycodone and hydrocodone to patients.

The "other acts" evidence at issue consists of the following:

1. <u>Defendant's Sex-for-Prescriptions Arrangement with Patient A.F.</u>

Between 2016 and 2017, the Defendant began treating A.F. as a pain patient. He never conducted a physical examination, although on their first meeting he placed her legs in his lap and stroked and groped them. Eventually the Defendant and A.F entered into an agreement wherein they would have sex in exchange for which the Defendant would provide A.F. with prescriptions for oxycodone and sometimes other drugs. The Defendant and A.F. had sex on at least three occasions (including at his office and in his car) resulting in him providing A.F. prescriptions for oxycodone. Text messages between the Defendant and A.F. confirm the sex-for-prescriptions agreement. A.F. eventually reported the Defendant's actions to the Nevada State Board of Medical Examiners (NSBDE) during the same time period that NSBDE had ongoing investigations relating to the patients charged in the Indictment.

The Defendant took significant steps to force A.F. to recant her statement to NSBDE, including preparing draft statements by A.F. stating that her original statement to NSBDE regarding her relationship and agreement with the Defendant was not truthful, meeting A.F. in the company of an individual known as "Head Cutter" and threatening to have her children taken away if she did not sign the statement, and finding A.F.'s homeless mother on the street and providing her with cash and cocaine in exchange for a statement calling into doubt her

daughter's credibility. Drafts of the statement the Defendant had A.F. sign and submit to NSBDE were recovered from the Defendant's office during the search of his premises in August 2019.

2. <u>Defendant's Recruitment and Pill Buy Back Program and Treatment of P.C.</u>

At least one witness, P.C., will testify that he was a patient of the Defendant during the relevant time period. This patient, P.C., was recruited by the Defendant's brother, known as "Pluck," and others, to begin "seeing" the Defendant for pain treatment. In exchange for a cash payment of $300 the Defendant would provide prescriptions for opioids.  During at least one after hours meeting with potential patients, during which the Defendant was present, the Defendant encouraged the patients to recruit others to the practice and a pill buyback program was also introduced. The pill buy back program through which the Defendant would also buy back a portion of the pills prescribed to P.C. and other patients. P.C. understood that these pills would be sold or provided by the Defendant to others, including out of state.

P.C. will further testify that he either went to the Defendant's clinic to pick up his monthly prescription or else others would pick it up and provide it to him every month. However, the Defendant never performed any physical examination on P.C.  P.C. wanted to actually see and be treated by the Defendant because P.C. was continuing to lose weight. However, the Defendant usually would not actually exam or treat P.C. Eventually P.C. left the Defendant's practice and was found to be suffering from liver cirrhosis and had lost over twenty pounds when Defendant was his provider.  P.C. will testify that in addition to never physically examining P.C., the Defendant never ordered a drug test to make sure P.C. was actually taking the drugs prescribed, only ordered one imaging test several months after prescribing oxycodone to P.C, and never advised the patient regarding the dangers of taking the prescribed amount of oxycodone or any plan to wean P.C. off the high dose he was taking. P.C. will also testify that

the Defendant provided him with promethazine syrup. P.C. will also testify that during this time, a single oxycodone pill would sell for approximately $10-15 dollars and that he would also sell promethazine cough syrup that the Defendant would occasionally prescribe.

## LEGAL STANDARD

**A. Inextricably Intertwined Conduct is Not An "Other Act" Subject to Rule 404(b) Analysis**

"[E]vidence should not be considered other crimes or other act evidence within the meaning of Rule 404(b) if the evidence concerning the other act and the evidence concerning the crime charged are *inextricably intertwined* [with the charged acts]." *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016) (emphasis added). In *United States v. Vizcarra-Martinez*, the Ninth Circuit explained:

> [W]e have allowed "other act" evidence to be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime. . . '[The jury] cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'"

*Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995) (citations and quotations omitted); *see also United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1997) (evidence should not be treated as "other crimes" evidence under Rule 404(b) and may be admitted for all purposes when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined); *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992) (evidence used to flesh out the circumstances surrounding the crime with which the defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context, is inextricably intertwined and not subject to Rule 404(b)); *United States v. Butcher*, 926 F.2d 811, 816 (9th Cir.), cert. denied, 500 U.S. 959 (1991) (when a defendant is prosecuted for

5

being a felon in possession of a firearm, evidence concerning other acts that are inextricably intertwined with the charged acts may be admitted); *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (relating to Section 841 violations and finding prior uncharged drug transactions as inextricably intertwined with charged transactions, stating: "The policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions') (internal quotations in the original) (citations omitted).

**B. Rule 404(b) Is A Rule of Inclusion, Not Exclusion.**

Even where evidence of prior acts is subject to Rule 404(b) analysis, this Circuit treats that rule as a rule of inclusion, not exclusion, and permits the admission of any evidence of other crimes or acts relevant to an issue in the trial, holding that such evidence should be excluded only when it proves nothing but the defendant's criminal disposition. *See, e.g., United States v. Diggs*, 649 F.2d 731, 737 (9th Cir. 1981); *United States v. Green*, 648 F.2d 587, 591 (9rh Cir. 1981); *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir. 1977); *see also United States v. Simon*, 767 F.2d 524 (8th Cir. 1985) (Rule 404(b) is a rule of inclusion rather than exclusion). This "inclusionary rule," however, is subject to the balancing test of Rule 403. *United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978).

"[A]ccordingly, '404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case.'" *United States v. Jernigan*, 341 F.3d 1273, 1280 (10th Cir. 2003) (citation omitted). "The threshold inquiry . . . is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). The Ninth Circuit has held that evidence is admissible under Rule 404(b) if: (1) sufficient proof exists for the jury to find that the defendant committed the prior act; (2) the prior act was not too remote in time; and (3) the prior act is introduced to prove a material issue

in the case. *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989), cert. denied, 494 U.S. 1083 (1990); *United States v. Spillone*, 879 F.2d 514, 518-20 (9th Cir. 1989), cert. denied, 498 U.S. 878 (1990). In addition, if used to prove intent, the prior act must be similar to the offense charged. Id. at 519.

Rule 404(b) permits evidence of acts committed both prior to and subsequent to the charged conduct. *See United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991) (holding that "404(b) does not distinguish between 'prior' and 'subsequent' acts" and "subsequent act evidence may be considered under Rule 404(b)"); *see also United States v. Hinostroza*, 297 F.3d 924, 928 (9th Cir. 2002) ("[O]ur precedent has squarely resolved in the government's favor the issue that subsequent Rule 404(b) evidence may be relevant and admissible.").

## C. Rule 403 Exclusion Requires Substantial and Unfair Prejudice

Rule 403 only requires exclusion when the danger of unfair prejudice substantially outweighs the evidence's probative value. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) ("[U]nfairly prejudicial evidence is that having an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). In addition, the Court can address any potential danger of unfair prejudice through the use of a limiting instruction. *United States v. Plancarte-Alvarez*, 366 F.3d 1058 (9th Cir. 2004) ("The disputed evidence had significant probative value while the danger of unfair prejudice was minimized by the court's limiting instruction."). "[T]he presence of a limiting instruction diminishes the danger of any unfair prejudice arising from the admission of other acts." *United States v. Franklin*, 250 F.3d 653, 659 (8th Cir. 2001). Reviewing courts are "reluctant to find that . . . evidence was unfairly prejudicial when the district court gave an appropriate limiting instruction." *United States v. Kent*, 531 F.3d 642, 651 (8th Cir. 2008).

**ARGUMENT**

The evidence described above is inextricably intertwined with the offense conduct alleged in this case. Defendant is charged with unlawfully knowingly and intentionally distributing controlled substances to patients without medical necessity and outside the usual scope of professional practice. The government must prove that the Defendant knowingly and intentionally did so. The government may do so through circumstantial evidence. *See Xiulu Ruan v. United States*, 142 S. Ct. 2370, 2382 (2022). "[A]s in any other criminal prosecution requiring mens rea, the Government may prove by reference to facts and circumstances surrounding the case that [the defendant] knew that his conduct was unauthorized or illegal." *Liparota v. United States, 471 U.S. 419, 434 (1985).* Although precise requirements may vary by State, the Supreme Court has identified certain types of behavior—such as failing to conduct a physical exam or other tests to evaluate the patient's reported ailments, not prescribing the drug based on the patient's medical interests, failing to monitor the dosage to guard against misuse or diversion, and charging a fee based on the amount of the drug prescribed rather than the services rendered—as sufficient (at least in combination) to support a conviction. *See United States v. Moore*, 423 U.S. 122, 142-143 (1975).

The above evidence is necessary to demonstrate that the Defendant knowingly acted without authorization in providing patients prescriptions for oxycodone in exchange for cash and sexual favors because he did so without first examining the patients, without ensuring they were taking the drugs, and without developing any plan to wean them off of these highly addictive substances. His purpose in providing prescriptions to patients without medical necessity was to receive money and favors (in the case of A.F., sexual favors). He also provided prescriptions to these patients so that his practice could then buy some of the pills back through the recruitment and pill buyback program. As such, this evidence relates directly to his

knowledge that his prescriptions fell below the standard of care and was without medical necessity. This evidence assists the trier of fact in evaluating "the events surrounding the commission of the crime" and is necessary to provide the jury with the "circumstances of the acts which form the basis of the charge." The evidence of A.F. and P.C. are part of a "single criminal episode" of prescribing Schedule II narcotics outside the scope of the standard of care and without medical necessity and provides the necessary context for the charged transactions/prescriptions. *See Williams*, 989 F.2d at 1070 ("Drier's testimony regrading uncharged conduct was inextricable from and provided necessary context for Drier's testimony about the charged conduct").

Additionally, to the extent the evidence qualifies as "other act" evidence, it is separately admissible under F.R.E. 404(b) as it advances proof of the Defendant's mindset behind his prescribing patterns and shows the absence of mistake or negligence. The trial evidence will show large and very potent quantities of oxycodone prescribed routinely across a broad array of patients, none of whom (the testimony will show) displayed symptoms indicating a medical need for the substance at that level. The testimony of A.F. and P.C. are instances where no medical necessity was indicated for the conduct at issue and will assist the trier of fact in understanding, and advance proof of, the profit motive behind this conduct and that the prescriptions during the time frame at issue were not the product of mistake or negligence.

Finally, none of the evidence described above contravenes Rule 403, which permits exclusion of evidence when the probative value is substantially outweighed by the danger of unfair prejudice. The probative value is extremely high, as it relates directly to the key issues of this case: proving that the Defendant would provide pain medications without authorization to

patients and that he did so knowingly and intentionally. No unfair prejudice would result from admission of this evidence.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the government respectfully requests that the Court grant the government's Motion and rule the evidence described above as admissible for all the reasons stated herein.

DATED this 27th day of February, 2023.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney

 /s/ Nadia Ahmed
 /s/ Steven W. Myhre
_____
STEVEN MYHRE
NADIA AHMED
Assistant United States Attorneys