JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
STEVEN MYHRE
Nevada Bar Number 9635
NADIA AHMED
Nevada Bar Number 15489
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336 / Fax: (702) 388-5087
Steven.Myhre@usdoj.gov
Nadia.Ahmed2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | Case No.: 2:19-cr-00216-ART-NJK |
|---|---|
| Plaintiff, | **Government's Reply in Support of Motion in Limine on Admissibility of Related Acts as Inextricably Intertwined Evidence or as Relevant Under Fed. R. Evid. 404(b)** |
| vs. | |
| ORLANDIS WELLS, | |
| Defendant. | |

**Certification:** This Reply is timely filed.

The United States, by and through undersigned counsel, respectfully submits its Reply in Support of Government's Motion in Limine on Admissibility of Related Acts as Inextricably Intertwined Evidence or as Relevant Under Fed. R. Evid. 404(b) (hereinafter "MIL evidence"). The MIL evidence is inextricably intertwined with the charged conduct because it advances proof that the defendant knowingly and intentionally fell below the standard of care in his treatment of patients entrusted to his care.

1

**I.     INTRODUCTION**

The indictment in this case focuses on the time period of 2016 to 2019 and specifically 32 prescriptions issued by defendant Wells to more than a dozen patients. Defendant Wells insists that the government's MIL evidence regarding his treatment of two uncharged patients is not inextricably intertwined with the charged patients, is inadmissible as other acts under FRE 404(b), and/or is more prejudicial than probative under FRE 403. Defendant is wrong. The MIL evidence is admissible as inextricably intertwined with the charges in this case or as other acts under FRE 404(b) because it advances proof of how the defendant practices medicine and how he cares for patients, which the government is required to prove as part of its case. . Accordingly, the government respectfully requests that the Court grant the government's Motion in Limine.

**II.    FACTUAL BACKGROUND**

Defendant Wells is charged with prescribing highly addictive opioids to specific patients enumerated in the indictment. As the government has consistently alleged, the defendant knowingly and intentionally prescribed these controlled substances without medical necessity and outside the usual scope of professional practice.  In doing so, he acted without authorization and thus his distribution of these drugs violates the law.

At trial, the   government carries the burden to prove that he prescribed opioids outside the scope of the standard of care of a physician practicing pain medicine – the field of medicine in which the defendant purported to practice and under which he claims to be authorized to prescribe opioids. The MIL evidence advances that proof by showing how he treated patients who came to him for pain management.  Accordingly, the evidence is admissible.

The government anticipates that the evidence at trial will show, among other things, that defendant Wells only saw pain patients that were referred by other patients. His pattern was to charge patients $300 for each prescription. The defendant did not see the patients when he

issued the prescriptions. His patient records from patient to patient, and specifically the charged patients, are nearly word for word the same with respect to both what the patient reported and with respect to physician observations. They are nearly exactly the same month after month further reflecting that distribution of these drugs at the highest dose and month after month was done without any actual pain management plan and contrary to the professional pain management practice.

When interviewed by the FBI, and in written responses to the Nevada State Board of Medical Examiners, the defendant insisted that he intended to wean patients off opioids and yet his prescribing practices remained exactly the same for most of his patients  Among other things, the defendant did not confirm patients were actually taking the medicine through the use of urine and/or blood tests, all as required by the standard of care.

### III. THE MIL EVIDENCE IS INEXTRICABLY INTERTWINED WITH THE CHARGED CONDUCT IN THIS CASE.

The MIL evidence relates directly to the defendant's practice of medicine.  It is evidence of the motivation behind issuing the prescriptions, his failure to examine or actually medically treat or care for his patients, and his issuance of prescriptions in exchange for cash or in-kind payments without even seeing the patients. The evidence directly advances proof of how his conduct fell below the standard of care. It assists the jury in understand how he practiced medicine during the time period charged in the Indictment.

The government seeks to present the testimony of A.F., a patient Wells saw during this time period, initially was offered the $300 cash for prescription that his other patients were offered. However, they negotiated a deal where she would provide sexual favors in exchange for prescriptions.  While Wells' Response appears to deny any relationship at all, his text messages with A.F. tell another story. Defendant clearly acknowledges having entered into a sexual relationship with A.F. His texts imply he could not allow the sex for drugs payments to

continue because his office was low on cash, and he clearly acknowledges providing her prescriptions.

The defendant's claim that A.F. is not worthy of belief because she recanted her statement to NSBME goes to the weight of the evidence not its admissibility. Juries routinely assess witness credibility – that is what trials are all about. If the Court rejected evidence each time a criminal defendant claimed that a witness was lying, there would be no trials. Whatever the defendant's claims regarding A.F.'s credibility, the jury is fully capable of assessing them and the Court will so instruct. The government is unaware of any rule of evidence that excludes testimony based on a claim that it is not credible, whether the testimony was previously recanted or not.

Similarly, P.C. was a patient at Wells' practice between 2016 and 2019. He came to Wells through a referral. He attended a meeting at the defendant's practice, where, in the defendant's presence, an associate told PC to recruit other patients for the practice and that the practice would buy back some of the pills prescribed to patients. The defendant prescribed opioids to P.C. without ever examining him. Even though he could never get an appointment with the defendant, PC consistently received prescriptions in exchange for $300 cash payments.

The MIL evidence with respect to both P.C. and A.F., sheds light on the defendant's treatment of patients entrusted to his care. In the greater context of his whole practice at the time, it fleshes out the circumstances surrounding the prescriptions to the charged patients and would allow the jury to understand how and why the defendant practice of medicine fell below the standard of care when prescribing opioid medications. *See United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992). It allows the jury to understand how Wells was running his practice and his motivation and intent in issuing the charged prescriptions. The evidence further puts into context the dearth of medical records, why they appear to be copy and pasted,

and the unreliability of the records in terms of whether any exam was actually conducted (given that such records exist for P.C. who will explain that the content of the records is clearly erroneous).

Moreover, the government learned of Wells' "treatment" of A.F. and P.C. as part of a series of NSBME investigations into the defendant's standard of care. These patients were seen during the same time as the charged patients. And most importantly, these patients' treatment by the defendant involves the same pattern of care as the charged patients. *See United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999) (evidence of prior uncharged burglaries was "inextricably intertwined" with charged crimes where uncharged burglaries were obtained during period of government surveillance, involved similar pattern of conduct, and occurred close in time to charged crimes).

Wells claims that the evidence is incredible but fails to acknowledge the corroborative evidence giving support to the accuracy of A.F. and P.C.'s testimony, including text messages between A.F. and Wells discussing their sex for prescription relationship and Wells' attempts to steer it back to cash for prescriptions, and the fact that the very draft statements that A.F. states she was presented with by Wells and his associate, known only to A.F. as "Headcutter" were recovered by FBI agents two years later from *Wells' own office.* Wells also fails to acknowledge that others also reported attending a meeting with Wells where they were presented with the opportunity to sell pills prescribed by Wells back to the practice.

Wells also seems to ask this Court to treat such evidence differently for him because he is a medical practitioner and that something more must be required. In that vein, Wells attempts to distinguish the applicability of *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) to this case because he is a physician whereas *Williams* involved a street dealer. Yet, the evidence in Williams showed how the charged conspiracy worked. Here, the conduct shows

5

how the defendant practiced and his prescribing patterns. Accordingly, it is inextricably intertwined and should be admitted.

### IV.     THE MIL EVIDENCE IS ADMISSIBLE UNDER 404(B)

In addition, the evidence should be admitted under IVFRE 404(b) as other acts evidence that shows motive, intent, and knowledge. "The threshold inquiry . . . is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Here, a material issue is Wells' knowledge and intent in issuing the prescriptions without medical necessity. The Ninth Circuit has discussed and squarely held that practice-wide evidence, including uncharged prescriptions, is relevant to demonstrate intent and therefore admissible under Rule 404(b). *See United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020) ("[W]e hold that uncharged prescriptions of controlled substances in enormous quantities, and in dangerous combinations, support a reasonable inference that the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose. [Defendant]'s practice-wide evidence was therefore probative of his unlawful intent, undermining his defense at trial that the charged prescriptions amounted to "a few bad judgments."); *citing United States v. Garrison*, 888 F.3d 1057, 1060, 1064 (9th Cir. 2018) for the proposition that "'other act' evidence is probative of intent in similar circumstances." *Lague*, 971 F.3d at 1040, n.7. In *Garrison,* the Court found sufficient evidence to uphold the verdict, including other act evidence that "Garrison pre-signed prescriptions, filled out pre-signed prescriptions, and wrote OxyContin prescriptions for people neither he nor anyone else

6

at the clinic had ever examined. He also lied to an investigator about his standard practices." *Garrison*, 888 F.3d at 1064.[1]

The MIL Evidence of A.F. and P.C. falls within such practice-wide evidence the Ninth Circuit has found relevant other act evidence material to a defendant's intent. They explain the general way in which the practice was run by Wells, the premise of the cash (or in kind) payment in exchange for a prescription, and the absence of any genuine treatment by the defendant, as laid out in the government's Motion and Notice.

Moreover, sufficient proof exists to find that the acts are similar to the charged conduct (exchange of cash/in-kind payment for prescriptions, limited information indicating the patients were ever examined, evidence that Wells did not vet whether the drugs would be used or resold, among others) and took place contemporaneously with the charged prescriptions. *Lague*, 971 F.3rd at 1040 ("the government need only lay a factual foundation from which a

---

[1] In *Garrison*, evidence also included that "the Clinic was what is often described as a "pill mill," and the activities of people working there led to the illicit street-sale of more than a million maximum-strength OxyContin tablets. From August 2008 to September 2010, the Clinic generated 13,207 prescriptions for OxyContin—all but six of which were for the drug's maximum dosage. The Clinic employed "patient recruiters" who induced people living in homeless shelters and rescue missions to visit the Clinic. These of course were not true "patients" in the ordinary sense of that word. The Clinic would then use the names and Medicare or Medi–Cal cards of the recruited patients to generate fraudulent OxyContin prescriptions. The recruited patients did not retain the OxyContin that they were prescribed. Instead, people working for the Clinic retrieved the drug from participating pharmacists or from the recruited patients, and the Clinic operators then had the pills sold illegally. The government learned of the Clinic's operations and took steps to shut the Clinic down and prosecute those it believed responsible for the scheme." *Garrison*, 888 F.3d at 1060. Such evidence is entirely consistent with Wells' practice and with the testimony the government anticipates that P.C. would provide regarding his experiences as a Wells patient, in addition to his testimony regarding Wells' refusal to see him, to treat his rapid weigh loss and his ultimate need for emergency admission at a hospital for liver cirrhosis. With respect to Wells' speculation regarding P.C.'s weight loss and BMI in the Response brief, it should be noted that the documents do not accurately reflect P.C.'s weight loss as, in P.C.'s experience, this basic information was not collected, and he was not seen on a regular basis.

jury could reasonably conclude that the defendant committed the allegedly-similar bad acts, and that he possessed the requisite intent in committing those bad acts") (citation, internal quotation marks and alteration omitted); *see also United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989), cert. denied, 494 U.S. 1083 (1990); *United States v. Spillone*, 879 F.2d 514, 518-20 (9th Cir. 1989), cert. denied, 498 U.S. 878 (1990).

The defendant's treatment of A.F. and P.C. is similar to that of the charged patients because he prescribed them the highest dose of oxycodone without examining them, without medical records reflecting their necessity, and in the highest amount each month. Like the charged patients, A.F. and P.C. were initially charged cash. P.C. continued to be charged cash each month. A.F. arranged an alternative to the cash payment method. Accordingly, the acts are also sufficiently similar to advance proof that the defend intended to commit the charged conduct. *Id.*

Accordingly, the probative value of the evidence far outweighs any –prejudicial effect. As the Ninth Circuit has long recognized, this Court may utilize a limiting instruction to the jury instructing them that other act evidence admitted to establish intent may be used for this limited purpose. *See Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) ("Ordinarily, a cautionary instruction is presumed to have cured prejudicial impact ... [and t]his is not a case in which the statements at issue are so clearly prejudicial that a curative instruction could not mitigate their effect."); *see United States v. Hinton*, 31 F.3d 817 (1994) (noting that the Ninth Circuit has consistently rejected the argument that Rule 403 precludes the admission of predominantly prejudicial bad acts evidence where "the evidence was probative of intent and the district court properly instructed the jury as to the limited purpose for which the evidence was being admitted"); *United States v. Sneezer*, 983 F.2d 920, 924 (where government offered evidence of prior rape occurring 3 years earlier against different victim and circumstances of

prior rape were nearly identical to charged conduct, court held that prior rape was not too remote in time, it was offered to prove a material and permissible element of the case to show intent and plan, and prejudicial effect did not outweigh probative value where trial judge gave limiting instruction at beginning of trial and end of testimony); *United States v. Otuonye*, 995 F.3d 1191 (10th Cir. 2021) (under Rule 403, evidence regarding what patients did with the drugs prescribed by defendant was admissible and relevant to whether the prescriptions had a legitimate medical purpose and was not more prejudicial than probative).

### V. CONCLUSION

WHEREFORE, the government respectfully that this Court grant its Motion and admit the MIL evidence as inextricably intertwined and as other acts evidence under Rule 404(b)

DATED this 27th day of March, 2023.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney

 /s/ Nadia Ahmed
 /s/ Steven W. Myhre

STEVEN MYHRE
NADIA AHMED
Assistant United States Attorneys